IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LISA SEXTON, | § | |
|     Plaintiff, | § | |
| V. | § | 1-15-CV-093  RP |
| AARON'S INC., | § | |
|     Defendant. | § | |

## OPINION AND ORDER

Before the Court are Defendant's Motion for Summary Judgment, filed November 9, 2015 (Clerk's Dkt. #25) and the responsive pleadings thereto.  After reviewing the parties' pleadings, relevant case law, as well as the entire case file, the Court issues the following Opinion and Order.

### I.  PROCEDURAL HISTORY

In this action, Plaintiff Lisa Sexton ("Sexton") alleges she was subject to discrimination by her former employer Defendant Aaron's, Inc. ("Aaron's").  Sexton is a Hispanic woman.  She alleges she was subject to differential treatment based on her gender and race, as well as to retaliation for reporting gender and race discrimination.

Aaron's has now filed a motion for summary judgment.  Aaron's argues it is entitled to summary judgment on Sexton's claims for discrimination because Sexton has not established the requisite prima facie case of discrimination as she was not qualified for the position she held and she was not treated less favorably than similarly situated employees.  Aaron's additionally argues Sexton's discrimination claims fail because Aaron's had a legitimate nondiscriminatory reason for its treatment of her.  Aaron's also moves for summary judgment on Plaintiff's retaliation claims, arguing she did not engage in protected activity, did not suffer an adverse employment action, and alternatively Aaron's had a legitimate nondiscriminatory reason for its treatment of her.  The parties have filed responsive pleadings and the matters are now ripe for review.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *Wise v. E.I. Dupont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir. 1995).  The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence.  *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir. 1992).

The Court will view the summary judgment evidence in the light most favorable to the non-movant.  *Rosado v. Deters*, 5 F.3d 110, 122 (1993).  The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial.  *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).  "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id*.

## III  RELEVANT EVIDENCE[1]

Aaron's is a lease-to-own retailer of furniture, consumer electronics, home appliances, computers, and home accessories.  (Def. Mot. Ex. A ("Knight Decl.") ¶ 2).  Sexton, a Hispanic

---

[1] Both parties have submitted numerous evidentiary exhibits in support of their respective positions.  The Court will address only the evidence relevant to the arguments necessary to resolution of the summary judgment motion.

female, was hired by Aaron's in September 2008 as a Manager Trainee. (*Id*. Ex. B ("Sexton Depo.") at 13, 20). Following a training period, Aaron's promoted Sexton on January 12, 2010 to Sales Manager at a store in Austin, Texas. On August 11, 2010, Aaron's promoted Sexton to General Manager and, after a short training at a store in Cedar Park, Texas, she was placed back at the Austin store, (Sexton Depo. at 14, 20, 66-67).

Sexton described her duties as General Manager as including direct management of profit and loss responsibility, revenue production, and inventory control. (Sexton Depo. at 67). Part of a General Manager's responsibilities and a measure of her success is financial results at her store. Under Aaron's policies, a General Manager is personally responsible and accountable for customers with late payments after a certain amount of time, which includes personally contacting customers with overdue accounts. (Knight Decl. ¶ 3).

As a General Manager Sexton reported to a Regional Manager. Sexton's first Regional Manager was Sarah Greene ("Greene"). In February 2011, Greene, as Sexton's General Manager, issued the first in a series of written counseling forms which stated Sexton's store had performed in the bottom of the region on a variety of financial measures. The form indicated that a failure to improve those reported measures "will result in further disciplinary action, up to and including termination." The form also indicated Sexton's performance failed to adhere to standards established in Aaron's performance manual. (Sexton Depo. at 69-70; Plf. Resp. Ex. 9 at Ex. D).

Greene issued similar written counseling forms to Sexton which stated Sexton's store performed poorly on financial measures in the prior month on October 2011, January 2012, February 2012, March 2012, June 2012, August 2012, October 2012, February 2013 and May 2013. Each form also warned Sexton that a failure to improve her performance would result in further disciplinary action. (Sexton Depo. at 71-81; Def. Mot. Ex. C; Plf Resp. Ex. 9 at Exs. F-O).

Green also issued a written counseling form to Sexton in April 2011 regarding Sexton's failure to work delinquent accounts daily as required by Aaron's policy. (Sexton Depo. at 70-71;

Plf. Resp. Ex. 9 at Ex. E).  Greene issued a written counseling form to Sexton in July 2013 warning Sexton that she had failed to personally call delinquent accountholders promptly as required by Aaron's policy.  (Plf. Resp. Ex. 9 at Ex. P).

David Knight ("Knight") became Regional Manager for Aaron's Austin stores in July 2013. (Knight Decl. ¶¶ 2-3).  In August 2013 Knight issued written counseling forms to Sexton which stated Sexton's store performed poorly on financial measures in the prior month and that Sexton had failed to follow proper phone procedures in her store.  (Sexton Depo. at 70-81; Def. Mot. Ex. C; Plf. Resp. Ex. 9 at Ex. Q-T).  In November 2013 Knight issued a written counseling form to Sexton which reminded her that she had been counseled in the past concerning her failure to call delinquent accounts daily, but that she continued to fail to do so.  (Plf. Resp. Ex. 9 at Ex. U).

On December 23, 2013, Knight issued a written counseling form to Sexton which reiterated his November warning concerning her failure to call delinquent accounts daily, but noted she had not solved the problem.  Knight stated in the form "This is unacceptable.  If it is found that you are not calling your 32+ accounts again, you will be terminated."  (Plf. Resp. Ex. 9 at Ex. V).

On December 31, 2013 Sexton called Aaron's Harassment Hotline.[2]  The incident description of the call states Sexton complained that Knight had contacted her Manager in Training and Customer Accounts Manager and directed them not to take service calls or assist with customer complaints.  Sexton further complained that, during a discussion with Knight regarding her failing to contact customers with delinquent accounts, Knight told her she would not be able to transfer out of his region because no other regional manager would take her.  Sexton complained "this has created a hostile work environment and poor service to the Customers."  (Plf. Resp. Ex. 8 at 1).  Sexton finally complained of Knight writing her up for not personally calling her delinquent accounts.  According to Sexton, she had delegated that responsibility and "no one else in the

---

[2] It appears that the "Hotline" is a service provided to Aaron's by a third party.  (Plf. Resp. Ex. 8 at 2).

region is held responsible for delegating the overdue accounts." (*Id*.).

The incident description was forwarded by Aaron's Manager of Associate Resources to Juan Granados ("Granados") for investigation. (*Id*. at 4). In his notes of his follow-up conversation with Sexton, Granados reports Sexton complained Knight's instructions that her managers could not take service calls was "making a hostile environment." (*Id*. at 3). Sexton further stated she felt Knight was "retaliating" because he believed she had called another Regional Manger regarding a transfer to his region. (*Id*.). Granados noted Sexton was reprimanded by Knight in December 2013 for failing to call overdue accounts, but Sexton asserted she had delegated those calls to other employees and that Knight allowed other General Mangers to delegate. Granados states he asked Sexton about her performance and Sexton admitted Greene "wrote me up before when I was in the bottom 20." (*Id*.).

Granados also talked to Knight about Sexton's call. Knight reported he viewed Sexton as not the "best performer," but denied anything more than trying to hold her accountable for her performance. (*Id*. at 4). Granados completed a closing memo, dated January 8, 2014, noting a lack of communication on both ends. He stated "Lisa is not performing her job as she should, and David is not providing 'enough' counseling." Granados reported that he had "asked David to spend more time with Lisa and Lisa to be more receptive to criticism and coaching." (*Id*. at 5).

In January 2014 Knight issued a written counseling form to Sexton warning her about various deficiencies in the condition of her store, and giving her seven days to fix the problems. Knight again warned Sexton that a failure to improve her performance would result in further disciplinary action. (Plf. Resp. Ex. 9 at Ex. W). According to Sexton, the condition of her store was not as described by Knight, but she felt pressured to sign the form and acknowledge Knight's critique as correct. (Sexton Depo. at 83-85).

In February 2014 Sexton's store received a 44 percent score on an internal audit. Sexton admitted the deficiencies noted in the audit were correctly reported. (Sexton Depo. at 85-86). The

audit score was reported by the Regional Auditor to Knight in an email dated February 13, 2014. The Auditor noted "At a bare minimum a return audit (possibly a manager change???) will be scheduled in about 60 days since the audit score was below 70." (Plf. Resp. Ex. 12).

According to Knight, this score is considered unacceptable for a General Manager. (Knight Decl. ¶ 4). Based on that score, and Sexton's "ongoing and long-standing performance issues which were not improving," in an email dated February 14, 2014 to Ryan Malone, Aaron's Southwest Operations Vice President, Knight recommended that Sexton's employment be terminated or that she be demoted to a Sales Manager. (*Id*.; Plf. Resp. Ex. 10).[3]

The email was forwarded to Granados. In turn, he forwarded the email to Beth Van Loon ("Van Loon"), Aaron's Senior Director of Associate Resources, with the following preface:

> Attached you will find documentation on the last audit score for Lisa Sexton a GM that has failed In her performance, and is struggling now, she is an Aarons associate since September 25, 2008, David and Ryan are inclined to terminate her, I am more in favor of "demoting" her, only because of her tenure and her ability to be profitable in the past. I would not like to company to look very insensitive and willing to dispose of someone in a "heart beat". What are your thoughts on this?

(Plf. Resp. Ex. 10). In response, Van Loon asked:

> My first question would be, what has the past practice been in that Division with struggling performers? Do we always term or do we demote? And since it is a female, I would scrutinize this carefully. Can you run a report of GM terms to see how many have happened In the past year or so? Analyze the data for me. Let me know.

(*Id*.). Granados replied "I asked the same questions, and Ryan agreed not to terminate her but 'demote' her, which is a common practice with struggling GM's." (*Id*.). Sexton was thereafter demoted to Sales Manager. (Sexton Depo. at 15-16; Plf. Resp. Ex. 14 at 3-4).

On March 20, 2014, Sexton filed a Charge of Discrimination with the EEOC. In it she

---

[3] Plaintiff suggests Knight's description of her performance is belied by the appraisal he completed in March 2014. However, the evidence she cites to in support of this contention is Knight's appraisal of her performance for the entire 2014 year which is dated March 2015. Moreover, as set forth below, Knight rated Sexton's performance as only 2.76 out of 5.0. (Plf. Resp. Ex. 13).

claimed that Knight regularly made derogatory comments about people of color and had treated her differently than other male general managers. Sexton also claimed she was retaliated against for reporting that discrimination in her December 2013 call to Aaron's hotline. (Plf. Resp. Ex. 14 at 3-4).

In July 2014, Sexton was promoted to General Manager of a different store in the Austin area. According to Knight, the position was the only General Manager position open at the time in the Austin area. (Knight Decl. ¶ 5). Knight states he was not aware at the time that Sexton had filed a Charge of Discrimination with the EEOC. (*Id.*). The compensation of a General Manager is based on the performance of a store. (*Id.*; Plf. Resp. Ex. 5 (Sexton Decl.") ¶ 24). Sexton describes the store as underperforming, due to high employee turnover and customer shrinkage. Sexton states she therefore had a lower salary than similarly situated colleagues, and thus did not consider her change in status to be a promotion. (Sexton Decl. ¶¶ 23-24).

Knight completed a 2014 Field Associate Appraisal of Sexton dated March 26, 2015. Sexton's overall performance is rated 2.76 out of 5.0. The form notes a rating of 2.0 indicates "Demonstration Needs Improvement." (Plf. Resp. Ex. 13).

## IV. DISCRIMINATION

Plaintiff alleges Aaron's subjected her to discrimination by enforcing discriminatory policies toward her, demoting her, and reassigning her to a less profitable store because of her sex and race. Aaron's contends summary judgment is warranted because Sexton has not established the requisite prima facie case of discrimination as she was not qualified for the position she held and she was not treated less favorably than similarly situated employees. Aaron's additionally argues Sexton's discrimination claims fail because Aaron's had a legitimate nondiscriminatory reason for its treatment of her.

A.      **Applicable Law**[4]

Title VII makes it "an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, [age] or national origin." 42 U.S.C. § 2000e–2(a)(1). Liability based on alleged disparate treatment depends on whether the protected trait "actually motivated the employer's decision." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). That is, the plaintiff's race and/or gender, must have "actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Id.*

Plaintiff may prove the requisite intentional discrimination using either direct or indirect evidence. Intentional discrimination can be established through either direct or indirect evidence. *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (gender discrimination); *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (racial discrimination). Direct evidence of discrimination is evidence that proves the defendant acted with discriminatory intent, without the need for inference or presumption. *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993). If direct evidence is unavailable, as is typically the case, the plaintiff may create an inference of discrimination by using the burden-shifting framework enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

To create an inference of discrimination, the plaintiff must first establish a prima facie case of discrimination. *Reeves*, 530 U.S. at 142; *Shackleford v. Deloitte & Touche, LLP,* 190 F.3d 398,

---

[4] Plaintiff asserts her claims under both Title VII and the provisions of the Texas Labor Code known as the Texas Commission on Human Rights Act ("TCHRA"). The TCHRA was patterned after federal anti-discrimination statutes in order to carry out the policies elucidated in Title VII of the Civil Rights Act of 1964. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 474 (Tex. 2001). Thus, in analyzing a TCHRA claim, courts seek guidance not only from Texas cases, but from analogous federal statutes and cases as well. *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005). *See also Amie v. El Paso Indep. Sch. Dist.*, 253 F. App'x 447, 450 n.1 (5th Cir. 2007) (because purpose of TCHRA is to provide for execution of policies of Title VII, same analysis is applied for each)

404 (5th Cir. 1999).  Such a prima facie case is established by evidence that: (I) the plaintiff is a member of a protected class; (ii) she was qualified for the position that she held; (iii) she was fired or suffered other adverse employment action; and (iv) she suffered from disparate treatment because of membership in the protected class.  *See Septimus v. Univ. of Houston,* 399 F.3d 601, 609 (5th Cir. 2005) (gender discrimination); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001) (racial discrimination).

The prima facie case, once established, raises a presumption of discrimination which the defendant must rebut by articulating legitimate, nondiscriminatory reasons for its actions. *McDonnell Douglas*, 411 U.S. at 802; *Shackleford*, 190 F.3d at 404.  This burden on the employer is only one of production, not persuasion, involving no credibility assessments. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255-56 (1981). Third, if the employer carries this burden of production, the presumption of discrimination created by the plaintiff's prima facie case "drops out of the picture" and the burden shifts back to the plaintiff to establish intentional discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511-12 (1993).  The plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative).  *Rachid v. Jack in the Box, Inc.*, 376 F3d 305 311-12 (5th Cir. 2004).  Thus, to survive summary judgment, the plaintiff must raise a fact issue as to whether the employer's proffered reason was either mere pretext for discrimination or only one motivating factor. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000).

**B.**     **Discussion**

The parties do not disagree that Sexton is a member of a protected class.  Aaron's does

contend Sexton cannot establish the requisite prima facie case because she has not shown she was qualified for the position that she held or that she suffered from disparate treatment because of membership in the protected class. Aaron's further maintains, even if Sexton could establish a prima facie case of discrimination, Aaron's has proffered a legitimate nondiscriminatory reason for demoting Sexton which Sexton has failed to show was a pretext for discrimination. For the purpose of the motion for summary judgment, the Court will assume Sexton has shown a prima facie case of discrimination and address Aaron's final argument. *See Ripoll v. Dobard*, 618 F. App'x 188, 191 (5th Cir. 2015) (assuming, without deciding, that plaintiff established prima facie case and examining only final factor under *McDonnell Douglas* framework).

As set forth above, Aaron's has provided evidence that Sexton received a series of written counseling forms noting performance issues beginning in February 2011. Almost immediately upon his assumption of his supervision of Sexton in the summer of 2013, Knight began issuing written counseling forms to Sexton regarding her poor performance in financial measures and phone procedures in her store, and also reminding her that she had been counseled in the past concerning her performance. In January 2014 Knight warned Sexton about the deficient condition of her store. Finally, in February 2014 Sexton's store received an unacceptable audit score. The Court finds this evidence sufficient to meet Aaron's burden to show a legitimate nondiscriminatory reason for Sexton's demotion in February 2014. *See Reeves*, 530 U.S. at 142 (burden on employer "is one of production, not persuasion," and "can involve no credibility assessment."); *Haverda v. Hays Cnty.*, 723 F.3d 586, 596 n.1 (5th Cir. 2013) (even incorrect belief that employee's performance is inadequate qualifies as legitimate reason for adverse employment action); *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) (same).

Sexton, in response, argues Aaron's contention that performance problems were the reason for her demotion is pretextual. To meet this burden, Sexton must show Aaron's "proffered explanation is false or 'unworthy of credence.'" *Staten v. New Palace Casino, LLC*, 187 F. App'x

350, 357–58 (5th Cir. 2006) (quoting *Reeves*, 530 U.S. at 143).  Pretext cannot be established by conclusory statements and subjective speculation, rather Sexton "must offer specific evidence refuting the factual allegations underlying [Aaron's] reasons" for demoting her.  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345-46 (5th Cir. 2007).  Further, Sexton "must rebut each nondiscriminatory reason articulated by [Aaron's]."  *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

Sexton first maintains Aaron's reliance on the numerous performance write-ups she received dating back to 2011 is pretextual because they are not an accurate reflection of her performance.  As an initial matter, the Court notes Sexton testified in her deposition that each of the write-ups prior to December 2013 were an accurate description of either her performance or the performance of the store of which she was General Manager.  (Sexton Depo. at 69-82).[5] Sexton contends that the performance evaluation which rated her as 2.76 is more indicative of her performance and indicates she was not a "poor performer."  However, as noted above, that evaluation was done nearly a full year after her demotion.  Moreover, contrary to Sexton's view, the evaluation rated her as a 2, which is defined as "Demonstration Needs Improvement," on every Field Competency, as well as an average of 1.97 in Store Performance Results.  This evaluation falls short of rebutting Aaron's contention of poor performance by Sexton.

Sexton also cites Granados' notation of "her ability to be profitable in the past" as establishing Aaron's assertion of poor performance is pretextual. (Plf. Resp. Ex. 10).  But Sexton's citation ignores the context of Granados' comment.  He offered that statement as a basis for recommending a lesser sanction of Sexton by demoting her, rather than terminating her employment.  Granados was not suggesting Sexton's record of poor performance was not true or

---

[5] The Court also notes that Sexton testified the only person she claims discriminated against her is Knight. (Sexton Depo. at 63).  She provides no explanation for the fact that her prior manager issued a series of write-ups documenting her deficient performance for well over two years before Knight became her manager.

not worthy of sanction. In fact, Granados also described Sexton as "a GM that has failed In her performance, and is struggling now." (*Id*.).

Sexton finally contends the initiation, timing and result of the February 2014 audit suggest Aaron's reaction to the audit was pretextual. In her declaration, Sexton admits Aaron's conducts audits of its store approximately once per year and, while General Managers are not aware of the exact date, the audits regularly happen within a particular month. She states the audit of her store was not scheduled to occur until April 2014. (Sexton Decl. ¶ 16). Further, according to Sexton, the audit score is dramatically influenced by "audit shrink"[6] and audit shrink is not uncommon in a store with over 1100 items of inventory. (*Id*).

The Court first notes that the only evidence Sexton provides that the audit was improperly early is her own declaration.[7] In his declaration Knight states "Aaron's corporate internal audit team conducts unannounced field audits of stores from time to time to determine compliance with various policies. (Knight Decl. ¶ 5). More to the point, Sexton does not contest the accuracy of the audit score.

Rather, Sexton contends Aaron's reaction to her low audit score was not the normal reaction. According to Sexton, the normal procedure is to schedule another audit in sixty days. (Sexton Decl. ¶ 19). She maintains this "normal practice" is confirmed in the email from the Auditor noting "At a bare minimum a return audit (possibly a manager change???) will be scheduled in about 60 days since the audit score was below 70." (Plf. Resp. Ex. 12).

But the statement Sexton focuses on makes clear that even the Auditor believed the "bare minimum" response of Aaron's should be a return audit, but that a "manager change" was certainly

---

[6] Sexton describes "audit shrink" as items of inventory which are not located. (Sexton Decl. ¶ 17).

[7] Sexton also contends that a statement by the Auditor in his email to Knight following the audit that "we discussed the audit earlier by telephone" suggests Knight knew about the audit before it occurred. (Plf. Resp. at 9 & Ex. 12). While the statement certainly suggests Knight was informed of the results of the audit prior to the email, it provides no evidence that Knight was aware that the audit was to occur. Nor, more importantly, does it rebut the conclusion that the audit score was unacceptably low.

...

a possibility. And, even if Sexton is correct that Aaron's normal practice is to schedule a return audit, Sexton's prior performance issues would proved a basis for Aaron's to deviate from that normal practice.

In sum, Sexton is required to show "that a discriminatory motive more likely motivated" Aaron's decision to demote her, "or that [Aaron's] explanation is unworthy of credence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). Sexton has failed to point to any evidence which meets this requirement. *See Laxton*, 333 F.3d at 578 (showing pretext requires plaintiff to produce "substantial evidence" indicating proffered legitimate nondiscriminatory reason is pretext for discrimination). *See also Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) (even incorrect belief that employee's performance is inadequate constitutes legitimate, nondiscriminatory reason for decision, question is not whether decision is erroneous, but whether decision was made with discriminatory intent). Accordingly, Aaron's is entitled to summary judgment on Sexton's discrimination claim.

## V.  RETALIATION

Plaintiff also alleges Aaron's demoted her and assigned her to a less profitable store in retaliation for her opposition to a discriminatory practice of Aaron's. Aaron's argues Sexton's retaliation claim fails because she did not engage in protected activity, did not suffer an adverse employment action, and alternatively Aaron's had a legitimate nondiscriminatory reason for its treatment of her.

**A.    Applicable Law**

To establish a prima facie case of retaliation, a plaintiff must demonstrate: (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 129 (5th Cir. 2011); *Fabela v. Socorro Indep.*

*Sch. Dist.*, 329 F.3d 409, 414 (5th Cir. 2003).  If the employee can demonstrate this prima facie case of retaliation, the *McDonnell Douglas* burden-shifting framework applies and the employer has the burden to state a legitimate non-retaliatory reason for the employment action.  *Turner*, 476 F.3d at 348.  Once the employer does so, the burden falls to the employee to show the explanation is a pretext for unlawful retaliation.  *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008); *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000).[8]

**B.     Discussion**

As with Sexton's claim of discrimination, the parties dispute whether Sexton has met her burden to show a prima facie claim for retaliation.  Sexton contends her hotline call and filing of a charge with the EEOC constitute protected activity, and that Aaron's later demotion of her from the position of General Manager, and then subsequent promotion of her back to General Manager of an underperforming store were adverse employment actions causally connected to her protected activity.  Aaron's disagrees, but also contends it had a legitimate non-retaliatory reason for Sexton's demotion and subsequent promotion.

As to Sexton's contention that the decision to demote her was retaliatory, the Court will focus not on whether Sexton has established her prima facie claim, but on whether Aaron's has proffered a legitimate non-retaliatory reason for the decision and whether Sexton has shown that proffered reason is pretextual.  In contending the decision to demote Sexton was not taken in retaliation for her engaging in protected activity, Aaron's again points to Sexton's performance history and audit results.  Sexton reiterates her contention that Aaron's explanation is merely

---

[8]  The Court notes this *McDonnell Douglas* burden-shifting framework is applicable to retaliation claims in which the Plaintiff argues the reasons offered by the employer for the adverse employment action are merely pretextual.  *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 805 (5th Cir. 2007) (applying *McDonnell Douglas* framework because plaintiff's retaliation claims are based on a pretext theory); *Fabela*, 329 F.3d at 415 (noting *McDonnell Douglas* framework does not apply where plaintiff is able to support element of retaliation claim with direct evidence of discrimination).  Sexton does not proffer any direct evidence of retaliation, but rather relies on a pretext theory in this action.

pretextual.  For the reasons set forth above, the Court finds Sexton's challenge insufficient.  *See Willis v. Cleco Corp.*, 749 F.3d 314, 318 (5th Cir. 2014) (plaintiff must show protected activity was the "but for" cause of the retaliation).  *See also Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004) (mere fact that some adverse action is taken after employee engages in protected activity is not alone enough to establish retaliation).

Sexton's final claim is that her July 2014 promotion back to General Manager constitutes retaliation by Aaron's.  To support a claim for retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means [the adverse action] well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Aaron's first maintains this claim fails because a promotion is by definition not an adverse employment action.  The Court finds Aaron's suggestion that a reasonable worker would not be dissuaded from engaging in protected activity if the result was a promotion to be well-taken.  However, Sexton maintains her promotion was nonetheless adverse because Aaron's was "setting her up to fail."  Specifically, Sexton contends the store to which she was assigned in July 2014 had experienced employee and manager turnover, customer shrinkage and was underperforming.  As a result, she had a lower salary than other General Managers.  (Sexton Decl. ¶¶ 23-24).

While Sexton's evidence may suggest her second placement as a General Manager was less desirable than her first, she does not present any evidence that her July 2014 placement was less desirable than her immediate prior position as a sales manager.  In fact, Sexton's pay history reflects that her salary as a sales manager was $30,160, and in July 2014 increased to $50,000.  (Def. Reply Ex. B).  Moreover, Aaron's has presented evidence that, in July 2014, Sexton was placed in the only General Manager position open at the time.  (Knight Decl. ¶ 5).  Accordingly, Sexton has failed to show her promotion was an adverse employment action and Aaron's is entitled to summary judgment as to Sexton's retaliation claim.

## V.  CONCLUSION

Accordingly, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment (Clerk's Dkt. #25).  All claims brought by Plaintiff Lisa Sexton are dismissed with prejudice.

**SIGNED** on January 13, 2016.

*[signature]*

ROBERT L. PITMAN
UNITED STATES DISTRICT JUDGE